UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                              )<br>               Plaintiff,            )<br>       vs.                                   )<br>                                              )<br>TAVARES CHANDLER,             )<br>                                              )<br>               Defendant.         )<br>                                              ) | Case No.: 2:10-cr-00482-GMN-PAL<br><br>**ORDER** |

Pending before the Court is Defendant's Motion in Limine (ECF No. 25) to Exclude Statements by Kimberly Valley, Defendant's wife.  According to defense counsel, Ms. Valley intends to invoke the spousal testimony privilege and will therefore be unavailable for cross-examination.  Having considered Defendant's Motion (ECF No. 25); the Government's Response (ECF No. 30); the Government's Supplement to its Response (ECF No. 35); Defendant's Reply (ECF No. 36); and the oral arguments made at the May 4, 2011 hearing, the Court will DENY Defendant's Motion.

## BACKGROUND

Defendant Chandler is charged in the single count of the Indictment (ECF No. 1) with being a Felon in Possession of a Handgun, a violation of Title 18, United States Code, sections 922(g)(1) and 924(a)(2).

On February 12, 2010 at approximately 8:25 a.m., Ms. Valley, who was accompanied by her mother and fifteen-year-old daughter ("AC"), telephoned the Las Vegas Metropolitan Police Department ("LVMPD") from a 7-Eleven convenience store to report that she and her daughter had been beaten by Defendant at their apartment approximately two to three hours earlier.  When LVMPD officers arrived at the 7-Eleven, Ms. Valley told them that Defendant

had punched her in the head and chest with a closed fist and had been beating her repeatedly for approximately three days, sometimes with a wooden stick. Ms. Valley also explained that Defendant held her against her will and kept her from leaving the apartment by taking the phones away and grabbing her by the hair when she attempted to escape. (Gov't Trial Memorandum 2:19-21.) She signed a Voluntary Statement corroborating her oral statements at 9:45 a.m. (*See* Ex. D, ECF No. 24.) The Statement also contained the following:

> He also pulled a gun on me. It was black. He pulled it on me. And told me he would kill me, if I ever cheat on him. . . . The gun that the police got. Tavaras has pulled that gun on me before. Last week he put it up to me. And told me he would kill me.

(Ex. D, ECF No. 24.)

On the same date, LVMPD officers searched the apartment that Ms. Valley shared with Defendant and her daughter after receiving Ms. Valley's consent to do so. The officers recovered a .40 handgun in the location where Ms. Valley had predicted it would be. According to the Government, "Officers also located five (5) grams of crack cocaine inside the apartment." (Resp. 3:9-10, ECF No. 31.)

LVMPD officers also interviewed AC, who informed the officers that she had witnessed Defendant beating Ms. Valley and that Defendant beat AC every other day with an electrical cord. (Gov't Trial Memorandum 4:1-6.) Apparently, Defendant kept extension cords in every room of the apartment so that he can easily access them and abuse AC. (Gov't Trial Memorandum 3:20-21.) On some occasions, Defendant would have AC remove all of her clothes except for her underwear before beating her with the electrical cords. (Gov't Trial Memorandum 3:21-22.) If Ms. Valley attempted to intervene, Defendant would redirect the beatings toward her. (Gov't Trial Memorandum 3:23-24.) AC also informed the police that Defendant had a gun that he always kept close to him and that he forced Ms. Valley to stay in the apartment so that she could not tell anyone what Defendant did to her. (Mot., Ex. A,

ECF No. 24.)

Later, in May of 2010, LVMPD officers again reported to Ms. Valley and Defendant's apartment after receiving a 911 call from Ms. Valley's mother indicating that Ms. Valley was being beaten. When police arrived, they knocked on the door and announced themselves, but Ms. Valley did not open the door because Defendant threatened her with bodily harm if she did so and she was "afraid of what he would do." (Mot., Exs. F & G, ECF No. 24.) The police officers then called Ms. Valley on her cell phone, and she reported that she was at a different location, though she was actually inside the apartment with Defendant. (Mot., Ex. F, ECF No. 24.) While the police were waiting outside of the apartment for her to return, Ms. Valley emerged from the apartment. (*Id.*) Ms. Valley then spoke with police and signed another Voluntary Statement explaining that Defendant had been beating her. The officers also learned that Defendant had hit his daughter, AC. (Mot. 3:26-27, ECF No. 24.) Defendant was taken into custody for battery domestic violence and later charged with child abuse. The battery domestic violence charges were dropped, but the child abuse charges remain pending in state court. (Mot. 3:26-4:2, ECF No. 24.)

Defendant now brings the instant motion, requesting that all of Ms. Valley's statements--both oral and written--be excluded from the jury trial, as he anticipates that Ms. Valley will be invoking her privilege to not testify against her spouse and, therefore, will be unavailable for cross-examination.

**I.    DISCUSSION**

    **A.    The Anti-Marital Facts Privilege and One of Its Exceptions**

A witness may choose to refuse to testify against his or her spouse when that spouse is a defendant in a criminal trial. *Trammel v. United States*, 445 U.S. 40, 53 (1980). The Ninth Circuit refers to this as "the anti-marital facts privilege." *See, e.g., United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992). The privilege arose from "two now long-abandoned

doctrines" of medieval jurisprudence: "first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman has no recognized separate legal existence, the husband was that one." *Trammel*, 445 U.S. at 44.

The common law recognizes an exception to this archaic privilege when the defendant commits an offense against the witness-spouse. *Wyatt v. United States*, 362 U.S. 525, 526 (1960); *United States v. Allery*, 526 F.2d 1362, 1365 (8th Cir. 1975). The term "offense" has been "broadly interpreted to include any personal wrong done to the other, whether physically, mentally or morally injurious." *Allery*, 526 F.2d at 1365. Some federal courts have also extended this exception to situations in which the defendant-spouse committed an offense against the child or children of the witness-spouse. *See, e.g., Allery*, 526 F.2d at 1366-67; *see White*, 974 F.2d at 1138 ("*Allery* held that the anti-marital facts privilege does not apply where the spouse or his or her children are the victims of the crime because applying the privilege in such a case is inconsistent with the policies underlying it.").

**B.     The Privilege and Exception in this Case**

At the May 4, 2011 hearing, counsel for Defendant did not dispute the existence of this common-law exception; counsel merely contended that the exception is irrelevant in this case, as, according to defense counsel, the exception was designed to afford a witness-spouse the opportunity to testify in circumstances in which he or she was victimized, not to give the Government the ability to compel the witness-spouse's testimony.

Prior to the Supreme Court's decision in *Trammel*, a defendant-spouse could invoke the anti-marital facts privilege to bar his or her spouse from testifying. *See Trammel*, 445 U.S. at 51-52. According to defense counsel, the common-law exception was designed to afford a victimized witness-spouse the opportunity to testify over the defendant's objections in the pre-*Trammel* era, but was not created to allow the Government to compel that

1 victimized witness-spouse to testify against his or her will.  Counsel for the Government
2 disagrees, contending that the exception empowers it to compel the testimony of a victimized
3 spouse.

4      In *Wyatt*, the Supreme Court was confronted with a factual scenario similar to that
5 which is currently before this Court.  The petitioner in *Wyatt* had been convicted of
6 knowingly transporting a woman in interstate commerce for the purpose of prostitution. 362
7 U.S. at 525-26.  Among other things, the petitioner argued that the trial court had erred by
8 ordering the victim of the alleged crime, whom the petitioner had married prior to the trial, to
9 testify on behalf of the prosecution, despite the objections of both the petitioner and the
10 victimized witness. *Id.* at 527.  The Fifth Circuit Court of Appeals upheld the trial court's
11 ruling and was, in turn, affirmed by the Supreme Court. *See id.* at 531.

12      In reaching its decision, the Supreme Court explained that, "[i]t is a question in each
13 case, or in each category of cases, whether, in light of the reason which has led to a refusal to
14 recognize the party's privilege, the witness should be held compellable." *Id.* at 529.  In other
15 words, if an exception to the anti-marital facts privilege would apply such that the defendant
16 would be prevented from barring the testimony of the witness-spouse, then the trial court
17 may consider, in light of reason why an exception would apply, whether the witness-spouse
18 should be compelled to testify.

19      Because the instant case arose after *Trammel*, Defendant may not bar his or her
20 spouse from testifying adversely.  However, even if Defendant could, this is the sort of case
21 in which the common-law exception would apply.  Both Ms. Valley and her daughter were
22 repeatedly abused by Defendant and forced to remain in the apartment against their will,
23 which clearly constitutes offenses against them. *See* 25 Charles Alan Wright & Kenneth W.
24 Graham, Jr., *Federal Practice & Procedure* § 5592 (1st ed. 2010) ("The classic case for
25 invocation of the exception is wife-beating; it is generally agreed that an assault, battery, or

other form of corporeal violence is within the exception."). Moreover, these offenses were facilitated and inextricably intertwined with the conduct for which Defendant was charged in this case: possessing a firearm despite having been convicted previously of several felonies. Possessing the firearm allowed Defendant to exert control over his victims and to prevent them from fleeing the apartment. It also prevented them from fighting back when he beat them and from telling third parties about the abuse. As such, the Court finds that the common-law exception to the anti-marital facts privilege would have applied in this case and prevented Defendant from barring Ms. Valley's testimony. The Court must now determine whether Ms. Valley's testimony should be compellable in light of these circumstances.

In *Wyatt*, the Supreme Court determined that the petitioner's victimized spouse could be compelled to testify against him due to the legislative history of the statute that the petitioner was charged with violating--its primary purpose "was to protect women who are weak from men who were bad," 362 U.S. at 530--and the Court's judgment that:

> [W]e are led to hold it not an allowable choice for a prostituted witness-wife 'voluntarily' to decide to protect her husband by declining to testify against him. For if a defendant can induce a woman, against her 'will,' to enter a life of prostitution—and the Act rests on the view that he can—by the same token it should be considered that he can, at least as easily, persuade one who has already fallen victim to his influence that she must also protect him.

*Wyatt*, 362 U.S. at 530. Similar reasons exist for compelling Ms. Valley's testimony in this case.

As the Supreme Court has noted, instances of domestic violence are "notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial." *Davis v. Washington*, 547 U.S. 813, 833 (2006). Indeed, over eighty percent of domestic violence victims do not cooperate with law enforcement officials after the victims'

initial allegations of abuse. R. Michael Cassidy, *Reconsidering Spousal Privileges After Crawford*, 33 Am. J. Crim. L. 339, 347 (2006). There are several factors that have been identified as contributing to this singularly high incidence of noncooperation among the victims of domestic abuse:

> 1) the victim fears retaliation from her abuser; 2) the victim fears that children of the relationship will be taken away from her or otherwise adversely effected [sic] by criminal proceedings; 3) the victim is economically dependent on her abuser and is concerned about the family's ability to support itself should the abuser be incarcerated; and, 4) repeated cycles of abuse and reconciliation over time have caused the victim to internalize feelings of low self-esteem, learned helplessness, and even personal responsibility for her own abuse.

*Id.* at 348.

Here, Ms. Valley almost certainly fears retaliation for testifying. Defendant has threatened her with a handgun and vigorously beaten her in the past. Not only that, he grabbed her by the hair and dragged her through the apartment when she tried to escape. Similarly, AC explained that Defendant did not want them to report the abuse they were enduring and held them against their will to prevent such reporting. Ms. Valley also likely has concerns regarding how her testimony will affect her children's futures and may well have internalized feelings of helplessness and hopelessness as a result of the cycle of physical abuse that she and her children have endured.

In light of the threats Ms. Valley has faced and the cycle of violence she and her daughter have suffered, this Court--similarly to the Court in *Wyatt*--cannot say that Ms. Valley's refusal to testify is truly "voluntary." In May of 2010, Defendant coerced Ms. Valley to refrain from opening the door to their apartment though the police--and thus, relief from the abuse--were only a few feet away, and also convinced Ms. Valley to lie to the police in an effort to make them leave the scene. Ms. Valley's refusal to testify is likely just

another result of Defendant exerting coercion over her.  Should this case advance to trial, Ms. Valley may be compelled to testify.

### C.  Defense Counsel's Contentions

Although defense counsel never addressed the Supreme Court's decision in *Wyatt*, counsel and the primary case to which they cite--*United States v. Jarvison*, 409 F.3d 1221 (10th Cir. 2005)--rely on language from the Supreme Court's more recent decision in *Trammel* as support for Defendant's position that Ms. Valley may not, under any circumstances, be compelled to testify at trial.  The language from *Trammel* that counsel alluded to at the May 4, 2011 hearing appears to be, "[a]ccordingly, we conclude that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Trammel*, 445 U.S. at 53.  This language does not have the sweeping effect that Defendant contends it does.

The question before the Court in *Trammel* was simply the narrow issue of "whether an accused may invoke the privilege against adverse spousal testimony so as to exclude the voluntary testimony of his wife." *Trammel*, 445 U.S. at 41-42.  Nowhere does the Supreme Court analyze whether the Government or a trial court may compel a witness-spouse to testify against his or her will, nor did the actual dispute before the Court require such an analysis.  Thus, to the extent that the language cited above can be construed as indicating that the Government or trial court cannot compel the witness-spouse to testify, such words would merely be nonbinding dicta, and this Court would still be bound by *Wyatt*, which directly addressed whether an unwilling witness-spouse can be compelled to testify by a court or the Government.

At most, Defendant can argue that it is no longer clear after *Trammel* whether a witness-spouse can be compelled to testify when the victimization exception applies. *See*

Wright & Graham, *supra*, at § 5592 (explaining "[s]ome writers have assumed that Trammel leaves the exception for crimes against the spouse unchanged, but others have thought it was no longer clear if the witness-spouse could be compelled to testify when the exception applied," but ultimately concluding that, after *Trammel*, "the federal exception operates only when the spouse does not want to testify"). But Defendant cannot reasonably argue that *Trammel* necessarily forecloses a federal court from compelling the testimony of an unwilling witness-spouse. *See In re Grand Jury Subpoena Koecher*, 601 F. Supp. 385 (S.D.N.Y. 1984) (finding that an unwilling witness-spouse's testimony may be compelled under the joint criminal enterprise exception, despite discussing *Trammel* at length). Because this Court is unwilling to embrace nonbinding dicta when a Supreme Court opinion is directly on point, the Court finds Defendant's argument unpersuasive.

**D.     The Anti-Marital Facts Privilege in State Law**

In actuality, *Trammel* provides support for this Court's decision to compel Ms. Valley to testify. As the Supreme Court noted in *Trammel*, "[t]he Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary development of testimonial privileges in federal criminal trials 'governed by the principles of the common law as they may be interpreted . . . in the light of reason and experience.'" 445 U.S. at 47 (quoting Fed. R. Evid. 501). In determining whether it was still appropriate for a defendant to have the ability to bar a witness-spouse from testifying, the Supreme Court explained that "[t]he trend in state law toward divesting the accused of the privilege to bar adverse spousal testimony has special relevance because the laws of marriage and domestic relations are concerns traditionally reserved to the states." *Id.* at 49-50. Similarly, the trend in state law within the Ninth Circuit to divest the witness-spouse of the ability to invoke the anti-marital facts privilege in cases in which the witness was victimized by the defendant-spouse has special relevance to this Court's analysis.

None of the nine states in the Ninth Circuit permit a witness-spouse to voluntarily refrain from testifying when he or she was the victim of the charged offense. Montana simply does not recognize the anti-marital facts privilege at all, though it does recognize the marital communications privilege. Mont. Code Ann. § 46-16-212. The other eight states recognize the anti-marital facts privilege but do not allow the witness-spouse to invoke it if he or she was victimized by the defendant-spouse. *See* Alaska R. Evid. 505(a)(2)(D)(i) (providing that there is no anti-marital facts privilege where one spouse is charged with "[a] crime against the person or the property of the other spouse or of a child of either"); Ariz. Rev. Stat. § 13-4062 (there is no privilege "in a criminal action or proceeding for a crime committed by the husband against the wife, or by the wife against the husband"); Cal. Evid. Code § 972(e) (no privilege exists where one spouse is charged with "[a] crime against the person or property of the other spouse or of a child, parent, relative, or cohabitant of either" or "[a] crime against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse"); Haw. Rev. Stat. § 626-1 ("There is no privilege under this rule . . . in proceedings in which one spouse is charged with a crime against the person or property of (A) the other, (B) a child of either, (C) a third person residing in the household of either, or (D) a third person committed in the course of committing a crime against any of these"); Idaho Code Ann. § 19-3002 (spouses are not competent to testify against each other except "[i]n cases of criminal violence upon one by the other; or acts of physical injury upon a child of either the husband or the wife where the injury has been caused as a result of physical abuse or neglect by one or both of the parents"); Nev. Rev. Stat. § 49.295(2)(e) (the privilege does not apply in criminal proceedings in which one spouse is charged with "[a] crime against the person or the property of the other spouse or of a child of either, or of a child in the custody or control of either");  Or. Rev. Stat. § 40.255 (there is no privilege "[i]n all criminal actions in which one

spouse is charged with bigamy or with an offense or attempted offense against the person or property of the other spouse or of a child of either, or with an offense against the person or property of a third person committed in the course of committing or attempting to commit an offense against the other spouse"); Wash. Rev. Code § 5.60.060 ("But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other . . . nor to a criminal action or proceeding for a crime committed by said spouse or domestic partner against any child of whom said spouse or domestic partner is the parent or guardian"). Where the exception for a crime against one's spouse would have applied at common law, the anti-marital facts privilege is simply inapplicable in those eight states. Although nearly all of these statutes indicate that the defendant-spouse must actually be charged with an offense against the witness-spouse in order for the privilege to cease to apply, they still provide relevant guidance in this case where the charged conduct is inextricably linked to abuse that Ms. Valley and her daughter suffered. Although the federal indictment may not formally list Ms. Valley as a victim of the charge against Defendant, it is undisputed that she was functionally a victim of Defendant's possession of the firearm and the coercive force it wielded.

## CONCLUSION

In light of the Supreme Court's guidance in *Wyatt v. United States*, 362 U.S. 525 (1960); the factual circumstances of this case; and the limited scope of the anti-marital facts privilege in the states constituting the Ninth Circuit:

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine (ECF No. 25) to exclude statements by Kimberly Valley is **DENIED**.

DATED this 16th day of May, 2011.

_____
Gloria M. Navarro
United States District Judge