UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:10-cr-00482-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| TAVARES CHANDLER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant's Motion in Limine (ECF No. 24) seeking: (1) to preclude the government from introducing evidence that Defendant possessed the .40 caliber firearm in connection with abusing his wife and daughter; (2) to exclude evidence related to the presence of drugs in the apartment at the time the Las Vegas Metropolitan Police Department seized the firearm at that location; and (3) an order allowing Defendant to conceal a tattoo on his face during trial.  The Government filed a Response (ECF No. 31), to which Defendant replied (*see* ECF No. 33).  In Defendant's Reply (ECF No. 33), he also asked the Court to exclude a statement he made to the police indicating that he would turn himself in.

At Calendar Call on May 2, 2011, the Court granted Defendant's request to be allowed to conceal his facial tattoo.

On May 4, 2011, the Court held a hearing on Defendant's remaining requests.  At that hearing, the Court GRANTED Defendant's request to exclude evidence of drugs and his request to exclude the statement he had made regarding turning himself in, but DENIED his request to exclude evidence of abuse. (*See* Minutes of Proceeding, ECF No. 43.)  This Order serves as a supplement to those rulings.

/ / /

I. **BACKGROUND**

Defendant Chandler is charged in the single count of the Indictment (ECF No. 1) with being a Felon in Possession of a Handgun, a violation of Title 18, United States Code, §§ 922(g)(1) and 924(a)(2).

On February 12, 2010 at approximately 8:25 a.m., Ms. Valley, who was accompanied by her mother and fifteen-year-old daughter ("AC"), telephoned the Las Vegas Metropolitan Police Department ("LVMPD") from a 7-Eleven convenience store to report that she and her daughter had been beaten by Defendant at their apartment approximately two to three hours earlier. When LVMPD officers arrived at the 7-Eleven, Ms. Valley told them that Defendant had punched her in the head and chest with a closed fist and had been beating her repeatedly for approximately three days, sometimes with a wooden stick. Ms. Valley also explained that Defendant held her against her will and kept her from leaving the apartment by taking the phones away and grabbing her by the hair when she attempted to escape. (Gov't Trial Memorandum 2:19-21.) She signed a Voluntary Statement corroborating her oral statements at 9:45 a.m. (*See* Ex. D, ECF No. 24.) The Statement also contained the following:

> He also pulled a gun on me. It was black. He pulled it on me. And told me he would kill me, if I ever cheat on him. . . . The gun that the police got. Tavaras has pulled that gun on me before. Last week he put it up to me. And told me he would kill me.

(Ex. D, ECF No. 24.)

On the same date, LVMPD officers searched the apartment that Ms. Valley shared with Defendant and her daughter after receiving Ms. Valley's consent to do so. The officers recovered a .40 caliber handgun in the location where Ms. Valley had predicted it would be. According to the Government, "Officers also located five (5) grams of crack cocaine inside the apartment." (Resp. 3:9-10, ECF No. 31.)

LVMPD officers also interviewed AC, who informed the officers that she had

witnessed Defendant beating Ms. Valley and that Defendant beat AC every other day with an electrical cord. (Gov't Trial Memorandum 4:1-6.)  Apparently, Defendant kept extension cords in every room of the apartment so that he could easily access them and abuse AC. (Gov't Trial Memorandum 3:20-21.)  AC also informed the police that Defendant had a gun that he always kept close to him and that he forced Ms. Valley to stay in the apartment so that she could not tell anyone what Defendant did to her. (Mot., Ex. A, ECF No. 24.)

II.     **DISCUSSION**

    **A.     Concealing Defendant's Facial Tattoo**

At Calendar Call on May 2, 2011, the Court noted its inclination to allow Defendant to use makeup during trial to conceal the teardrop tattoo located on his face, based on Defendant's representation that the tattoo could cause jurors to believe that he was a member of a gang or a murderer.  The Government did not object to this, so the Court granted Defendant permission to conceal his tattoo during the course of the trial.

    **B.     Exclusion of the Crack Cocaine**

Defendant also sought to exclude evidence pertaining to the five (5) grams of crack cocaine that police recovered from Ms. Valley and his apartment, pursuant to FRE 404(b) on the grounds that such evidence is irrelevant to the charged crime and unfairly prejudicial.  The Government contended that such evidence is relevant because "it is well settled that firearms and narcotics often go hand in hand." (Resp. 8:4-6, ECF No. 31.)  Citing *United States v. Prado-Medina*, 276 Fed. Appx. 687, 689 (9th Cir 2008); *United States v. Carrasco*, 257 F.3d 1045, 1048-49 (9th Cir. 2001); and *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991), the Government claimed that "the Ninth Circuit noted that firearms are known tools of the trade of narcotics dealing because of the danger inherent in that line of work; evidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon." (Resp. 8:6-10, ECF No. 31.)  The Court agreed with the Government so long as there was

evidence supporting the Government's claim that the five (5) grams of crack cocaine found were being distributed or sold.

However, the cases the Government cited are factually distinguishable from the case at hand. In *Prado-Medina*, the evidence that the defendant sought to exclude was an ATF agent's testimony that the defendant had told him that he, the defendant, had sold crack cocaine to someone on the street just prior to his arrest. 276 Fed. Appx. at 689. In *Carrasco*, the evidence sought to be excluded were a "scale with narcotics residue" and "empty pink baggies," which the Ninth Circuit determined were "by themselves indicative of drug trafficking." 257 F.3d at 1048. Similarly, the defendant in *Butcher* sought to exclude a "large quantity of drugs and cash," as well as "scales, plastic bags, and the pay and owe sheets." 926 F.2d at 816.

In this case, however, the police did not recover any of the sort of materials related to drug trafficking or quantity of drugs present in the cases the Government cites; the police recovered a single five (5) gram rock of crack cocaine, no scale, and no bags destined to contain a sellable quantity of illegal drugs. Nor did Defendant confess to having sold drugs, as did the defendant in *Prado-Medina*. Although the Government is correct that "evidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon," *Butcher*, 926 F.2d at 816, it is far from clear that the five (5) grams of crack cocaine found in this case, without more, were evidence of narcotics trafficking and therefore relevant to show knowing possession of a firearm. Accordingly, the Court finds the five (5) grams of crack cocaine to be irrelevant to the charge at hand. Even if the Government were to argue that the crack cocaine is still relevant, its limited probative value would be dramatically outweighed by the likelihood of unfair prejudice it would pose. See FRE 403. For these reasons, and those articulated at the May 4, 2011 hearing, evidence of the crack cocaine will be excluded.

/ / /

### C. Exclusion of Defendant's Statement to Police

Defendant also asked the Court to exclude statements he made to the police after they had searched his apartment on February 12, 2010, in which he indicated that he would turn himself in. According to Defendant, those statements were made prior to Defendant learning that he was going to be charged as a felon in possession of a firearm, so they are irrelevant to this case and cannot be used as an admission of wrongdoing. (Reply 8:21-9:6, ECF No. 33.) At the May 4, 2011 hearing, counsel for the Government candidly conceded that it did not appear that Defendant knew that he was going to be charged with possessing the firearm when he made the statement; rather, he appeared to believe that he was simply facing allegations of domestic abuse. The Government did, however, explain that it had not yet finished conducting interviews with all of its potential witnesses.

Based on those representations, the Court found that the statement was not relevant to the charged crime and that, even if it were, its probative value would be so low that it would be easily outweighed by its potential for unfair prejudice. Accordingly, the Court ruled that the statement should be excluded, but agreed to reconsider its ruling if the Government's subsequent pretrial interviews with its witnesses revealed information that would make Defendant's statement relevant. After the hearing, the Government provided no additional briefing or information in this regard.

### D. Exclusion of Evidence that Defendant Abused His Wife and Daughter

The Government wished to introduce evidence pertaining to Defendant's use of the .40 caliber handgun in connection with his abuse of Ms. Valley and AC on occasions prior to February 12, 2010, arguing:

> While such evidence is prejudicial, the probative value outweighs the prejudice. Moreover, the Government contends that abovementioned evidence is relevant because, not only does it explain why the officers were at the apartment occupied by Kimberly Valley, the defendant, and their two children in

>common, the evidence is directly related to the defendant's possession of the firearm he is charged with possessing in the criminal indictment. According to Ms. Valley and [AC], the defendant often keeps the firearm on his person and uses it as a form of intimidation to prevent Ms. Valley from reporting the on-going abuse in the home.

(Gov't Trial Memorandum 7:5-11.) Conversely, Defendant argued that evidence of abuse is irrelevant to any fact that is of consequence to the determination of the charged action and that such evidence of abuse would also be unfairly prejudicial because it would elicit a negative visceral reaction among the jurors, particularly in light of the fact that Defendant only abused the women in the apartment and not his son. (Mot. 4:7-5:22, ECF No. 24.)

### 1. Relevance

Defendant's use of the firearm in connection with his abuse of Ms. Valley and his daughter makes it more probable that the defendant knowingly possessed the firearm, which is the element of the charged crime at issue in this case; therefore, that evidence is relevant under Federal Rule of Evidence 401. Testimony indicating that Defendant wielded the firearm in an attempt to intimidate his victims into silence and to prevent them from leaving the apartment is highly relevant to whether Defendant knowingly possessed the handgun, as it would be difficult, if not impossible, to threaten someone with a handgun and point it at them without knowingly possessing it. Indeed, such evidence is directly related to the possession element of the charged crime, as the evidence places the firearm in the dominion and control of Defendant.

### 2. Rule 404(b)

Even though evidence of Defendant wielding a firearm while abusing his wife and daughter could be construed as evidence of a previous bad act, the evidence can be admitted under Federal Rule of Evidence 404(b) if it is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In order to be properly admitted under Rule 404(b), evidence must satisfy four requirements: "(1) it must

prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

Furthermore, the evidence must be analyzed pursuant to Federal Rule of Evidence 403 to determine whether its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Arambula-Ruiz*, 987 F.2d at 602; *see* Fed. R. Evid. 403.  Evidence of prior crimes, acts, or wrongs is not admissible to prove the character of an accused in order to show action in conformity with that character. *Arambula-Ruiz*, 987 F.2d at 602.

Here, evidence of Defendant's use of the firearm in connection to the abuse goes to Defendant's knowledge of the firearm, as well as his motive and intent for using the handgun, and absence of mistake. *See United State v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent.").  This is directly relevant to the first element of being a Felon in Possession of a Firearm: whether the defendant knowingly possessed a firearm, *see* Ninth Circuit Model Criminal Jury Instructions, Instruction 8.65 (2010 ed.).  Further, the prior bad act--keeping a firearm close by and threatening, implicitly or explicitly, his victims with it--is substantially similar to the charged conduct, in which Defendant is charged with knowingly possessing a firearm on or about February 12, 2010.  Both involve the knowing possession of and control over the same firearm.

The prior conduct is also based on sufficient evidence--namely, the testimony of AC and Ms. Valley--and is not too remote in time.  Ms. Valley will testify that Defendant

threatened her with the same gun at issue in this case a mere one week before February 12, 2010. This can hardly be thought too remote for it to substantiate Defendant's knowledge, intent, and motive.

Defendant's citations to the unreported Ninth Circuit decision in *United States v. Hankins*, 94 Fed. Appx. 507 (9th Cir. 2004) do not bolster his position. In *Hankins*, the trial court admitted evidence that the defendant had possessed an assault rifle on May 17, 2001 at the defendant's trial for illegally possessing a Ruger handgun on May 29, 2001. Because the defendant had obtained both weapons from the same closet of the same individual, the evidence was admitted to show the defendant's knowledge of the firearms contained there. *Id.* at 509. The Ninth Circuit reversed, determining that the evidence of the May 17 conduct was not sufficiently similar to the charged conduct and did not tend to prove a material point because the instances involved a different weapon and "[a]ny inferences that could be drawn about [the defendant's] *general* knowledge of guns in [the] closet were immaterial to the ultimate question of whether [the defendant] knowingly possessed the *specific* handgun at issue in this case." *Id.*

In the instant case, however, Defendant's prior actions involve the same handgun as he is charged with possessing on or about February 12, 2010 and therefore his prior actions *are* relevant to his knowledge, motive, and intent with regard to that specific same handgun.

### 3. Rule 403

It is undisputed that evidence of Defendant's use of the handgun while abusing his wife and daughter would be prejudicial to Defendant; however, Federal Rule of Evidence 403 is only concerned with whether such evidence is unfairly prejudicial and whether the probative value of the evidence is "substantially outweighed" by that unfair prejudice. Fed. R. Evid. 403. Defendant's knowing possession of his .40 caliber firearm was inextricably intertwined with his repeated, continued abuse of his wife and daughter. He allegedly possessed the firearm in

order to exert authority over them to facilitate the abuse, to prevent them from fighting back, and to bar escape from the apartment. Thus, a trial pertaining to whether Defendant knowingly possessed the firearm must necessarily include testimony regarding the prior acts of abuse in which he wielded the gun. This evidence is *highly* probative of Defendant's knowing control over the gun, and such great probative value is not substantially outweighed by the risk that the evidence of abuse will be overly prejudicial. The evidence will not be excluded. The great probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, especially when the court provides limiting instructions. Here, the Court granted the request for limiting instructions both before the testimony is elicited and afterwards indicating that Defendant is not on trial for the physical abuse and that the jury should not consider his culpability as to the abuse when deciding whether he is guilty of the charged crime.

Further, the Court determined that the photographs of the injuries sustained by the victims of the abuse may not be introduced by the Government unless it becomes necessary to do so for impeachment purposes.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine (ECF No. 24) is **GRANTED in part** and **DENIED in part**. Defendant may wear makeup during the trial to conceal his facial tattoo. The Government may introduce evidence of Defendant using the handgun in connection with physically abusing his wife and daughter, but the Government may not introduce evidence of the crack cocaine police recovered at Defendant's apartment.

**IT IS FURTHER ORDERED** that the Government may not introduce evidence that Defendant said he would turn himself in, unless the Government can provide information showing that the statement is relevant to the charged crime.

DATED this 19th day of May, 2011.

_____
Gloria M. Navarro
United States District Judge